CHICAGO BRIDGE & IRON WORKS, APPELLANT, V. CITY OF SOUTH SIOUX CITY, APPELLEE.

FILED JUNE 22, 1922.   No. 21863.

Municipal Corporations: WATER-WORKS. The authority of a municipal corporation, created under the statute governing cities of the second class and villages, to contract for the construction of water-works is measured by statute, and not by the value of the bonds voted for that purpose.

APPEAL from the district court for Dakota county: GUY T. GRAVES, JUDGE. Reversed, with directions.

Hirschl, Hirschl & Brooks, R. E. Evans and William P. Warner, for appellant.

Ward R. Evans, contra.

Heard before MORRISSEY, C. J., ROSE, DEAN, ALDRICH, DAY and FLANSBURG, JJ., ALLEN, District Judge.

ALLEN, District Judge.

The plaintiff, the Chicago Bridge & Iron Works, a co-partnership, sued the city of South Sioux City, herein called the city, a municipal corporation under the statutes of Nebraska for the government of cities of the second class and villages, to recover $1,150, with interest thereon from March 1, 1913. A jury having been waived, the case was tried to the court and a final judgment entered dismissing the action without day at the plaintiff's costs, and the plaintiff appealed.

From the record and briefs, we gather the following facts: October 15, 1912, the electors of the city voted for the issuance of bonds in the sum of $25,000, the proceeds to be used for the purpose of "erecting, constructing and maintaining a system of water-works and water supply in said village." The bonds were issued and sold through the agency of the National Company of South Bend, Indiana, of which J. F. Cole was president, sometime before April 15, 1913, for $25,311.04 net. March 3, 1913, and after their sale, the city entered into a written contract with the National Company employing it as engineer to make the necessary surveys, prepare the plans and estimates, and to superintend the construction of the plant, which it did through the instrumentality of its president J. F. Cole, for 10 per cent. of the construction cost. October 6, 1913, the city contracted with John P. Greene, in the name of J. P. Greene, to furnish the material and labor and to construct the plant for $24,710.75, but before doing so the city council, by an order entered of record, selected the type of tower, tank and riser pipe manufactured by the plaintiff and directed their use in the construction of the plant. Pursuant to such instruction, Greene contracted with the plaintiff to furnish the tower, tank and riser pipe for $3,250, and, by letter of October 14, 1913, notified the city that he had done so and directed it to pay that amount to the plaintiff in accordance with the terms of his contract with the city. The latter accepted the order and agreed to pay the plaintiff as therein requested. Thereafter the city paid the plaintiff $2,100 of the amount and

agreed at subsequent times to pay the remaining $1,150, to recover which this action was brought. Under the arrangement between Greene and the city, the plaintiff was to look to the latter for compensation for the material and work of installing the tower, tank and riser pipe, and the city agreed to pay the plaintiff that part of the cost of the plant. The tower, tank and riser pipe were received without objection and used by the city as a part of its plant and since then have been, and still are, used by it without objection or complaint. The city did not deny its liability to the plaintiff or refuse to pay until long after the completion and acceptance of the plant, nor until after the final settlement with Greene, the contractor, in which it took credit therefor.

It is admitted that the election was legal and that the bonds issued were sold in compliance with the law. There was money in the city treasury, the proceeds of the sale of the bonds, to pay the total expense of constructing the plant, including the tower, tank and riser pipe, when the latter were purchased. It is conceded that, of the $3,250 to be paid for the tower, tank and riser pipe, $2,100 was paid, leaving $1,150 unpaid.

Counsel for appellee contends that Greene's contract was *ultra vires* and void, because the city thereby incurred an indebtedness for the plant in excess of the bond issue, and that the city council had no authority to make said contract, but it does not appear that there was any deficit in the fund at the time the contract was made. It is claimed that no estimate of the appropriation was made for the indebtedness as provided by statute and that the contract was void for that reason. In his brief counsel for appellee says: "Our contention is that the Greene contract under which the plaintiff sues is illegal because it exceeds the amount of bond issue and could not be ratified by the council thereafter," and that the 10 per cent. compensation paid the National Company, or Cole, its president, under the employment contract, should be charged to the water-bond fund, and that, that sum having been paid, there was

a deficit to the extent of $1,150, a part of the price of the tower and tank, and therefore the contract of purchase of the tower and tank was *ultra vires* and void.

As a general proposition, it is admitted that a contract in excess of the statutory power of a municipal corporation is *ultra vires,* but, at the time the Greene contract was made and the tower and tank purchased and installed, the city had authority to borrow money or to issue bonds not exceeding 20 per cent. of the assessed value of the taxable property for the construction of the plant. Rev. St. 1913, sec. 5119. There is nothing in the record to show that it exceeded its authority, and a subsequent diminution or diversion of any part of the fund from the purpose for which it was voted would not render the contract *ultra vires.* A contract to be *ultra vires* must be beyond the authority of the city under any circumstances, but a subsequent change of the fund would not render it invalid. There is no provision in the contract employing the National Company, or Cole, its president, as engineer that compensation therefor should be paid from the proceeds of the bonds.

The contention of counsel for the appellee that the Greene contract was void because no estimate or appropriation was made for the indebtedness as provided by section 5187, Rev. St. 1913, is equally untenable, as the city did by ordinances 87 and 88 provide that a tax of eight mills on the dollar should be assessed against the taxable property of the city "for the payment of interest and to establish a sinking fund to pay the principal on water-bonds as the same become due." But neither an estimate nor an appropriation was necessary to the validity of the contract. *City of North Platte v. North Platte Water-works Co.,* 56 Neb. 403, 409 *et seq.*

In entering judgment dismissing the plaintiff's action without day and in awarding the defendant costs, we think the learned trial judge erred. The judgment of the district court is therefore reversed and the cause remanded, with directions to enter judgment for the plaintiff in the sum of

$1,150, with 7 per cent. interest thereon from March 1, 1913, and for costs.

REVERSED.